UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANNY O. MONAHAN, JR.,

     Plaintiff,                           Civil Action No. 16-13026

v.                                      HON.  ROBERT H. CLELAND
                                      U.S. District Judge
                                      HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL            U.S. Magistrate Judge
SECURITY,

     Defendant.
_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Danny O. Monahan, Jr. ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Docket #19] be DENIED  and that Defendant's Motion for Summary Judgment [Docket #25] be GRANTED.

# I.  PROCEDURAL HISTORY

On February 3 and March 12, 2014 respectively, Plaintiff filed an applications for DIB and SSI, alleging disability as of June 1, 2013[1] (Tr. 181, 188).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on June 9, 2015 in Toledo, Ohio before Administrative Law Judge ("ALJ") Virginia Herring (Tr. 36).  Plaintiff, represented by attorney Wesley Lamey, testified (Tr. 43-77), as did  Vocational Expert ("VE") Roxanne Benoit (Tr. 77-85).  On August 20, 2015, ALJ Herring found that Plaintiff was not disabled[2] (Tr. 19-31).  On June 20, 2016, the Appeals Council denied review (Tr. 1-5).  Plaintiff filed for judicial review of the final decision in this Court on August 19, 2016.

# II.  BACKGROUND FACTS

Plaintiff, born June 8, 1984, was 31 at the time of the ALJ's determination (Tr. 31, 181).  His application for benefits states that he left school after 10th grade and worked previously as an assembler, fast food worker, cleaner, and fast food shift manager (Tr. 236).  He alleges disability due to Dercum's disease,[3] headaches, muscle cramps/spasms, body

---

[1]Plaintiff later amended his alleged onset of disability date to July 1, 2014 (Tr. 19).

[2]The August 20, 2015 determination is signed by Virginia Trzaskoma, due to an apparent name change subsequent to the hearing (Tr. 31).  For consistency's sake, the Court will continue to refer to her as ALJ Herring.

[3]

Dercum's disease, a rare disease, is also known as Adiposis Dolorosa. http://www.webmd.com/a-to-z-guides/dercum-disease. (Last visited August 17, 2017).  It is characterized by "multiple, painful growths consisting of fatty tissue (lipomas)."  *Id.* The growths "mainly occur on the trunk, the upper arms and upper legs and are found just below the skin (subcutaneously)." *Id.*

pain/shaking, concentrational problems, and throbbing pain of the hands, arms, stomach, and knees (Tr. 235).

### A. Plaintiff's Testimony

*Plaintiff's counsel prefaced his client's testimony by amending the alleged onset of disability date to July 1, 2014* (Tr. 43).

Plaintiff then offered the following testimony:

He lived in a single-family, one-story home in Blissfield, Michigan with his husband and dog (Tr. 44-47). He attended school until 12th grade but did not receive a diploma (Tr. 45). He stood 5' 3" and weighed 236 pounds (Tr. 45). He gained around 36 pounds in the year leading up to hearing due to his inability to afford medication or therapy (Tr. 46). At the time of the hearing, he was insured through Medicaid but had not resumed medication (Tr. 46).

Plaintiff experienced difficulty using stairs due to knee pain resulting from lipomas (Tr. 47). He held a driver's license but drove only rarely due to back and bottom pain (Tr. 48). He was unable to drive for more than "a block or two" (Tr. 48). Due to body pain, he was unable to take public transportation (Tr. 49). He rarely left the house or visited with family members (Tr. 49).

Plaintiff's work history included work at a Burger King as a kitchen worker (Tr. 50). The work did not require him to lift more than five pounds (Tr. 51). Before that, he worked

as a cook's helper on a part-time basis and before that (2008 to 2010) he was unemployed (Tr. 53).  Before becoming unemployed, he worked as a commercial cleaner (Tr. 53-54).  The cleaning position did not require him to lift even 10 pounds (Tr. 54).  Prior to the cleaning position, he worked at Wendy's as both a crew member and a night shift manager (Tr. 54).  Neither of the Wendy's positions required him to lift more than 10 pounds (Tr. 55).

Plaintiff claimed disability as a result of an increased number of lipomas from Dercum's disease, dizziness, and hot and cold sweats (Tr. 56).  The lipomas were now close to his spine, which made daily activities difficult (Tr. 57).  He coped with the condition using the modalities of manual lymph drainage (massage), the use of self-massaging tools, marijuana, Celexa, and compression garments (Tr. 57-58).  The combination of modalities partially relieved the body pain (Tr. 58).  He had been advised to lose weight (Tr. 57).  His condition was worsened with normal activities such as reaching to put dishes in the cupboard, getting in the shower, and tying his shoes (Tr. 59).  In addition to the Celexa, he took Zofran for nausea (Tr. 60).  He denied medication side effects (Tr. 61).  He drank occasionally, smoked marijuana two or three times a day, and smoked a half-pack of cigarettes each day (Tr. 62).  He experienced nighttime sleep disturbances and took a nap during the day (Tr. 63).

Plaintiff typically arose at 11:00 a.m. or later, took his medication, then sat in a recliner and watched reality television (Tr. 64).  Typically, he did not focus on the show for an entire hour due to being distracted by the dog or checking into Facebook on his smart phone  (Tr. 65).  He owned a computer but used it mostly for downloading pictures  and

printing them (Tr. 66). He spent around 20 minutes a day playing a video game on his smart phone (Tr. 66). His daytime activities were limited to preparing light meals, doing the dishes, and "pushing the vacuum for a minute" (Tr. 67). He was unable to complete a grocery shopping trip without the help of his husband or mother-in-law (Tr. 67). Heat intolerance prevented him from staying outside more than 10 minutes (Tr. 68). He was unable to sit for more than 10 minutes at a time due to hip pain shooting upward into his back and shoulders (Tr. 68-69). He was unable to lift or carry a gallon of milk without experiencing hand cramping (Tr. 70). His ability to use a utensil or write was unaffected (Tr. 71).

Plaintiff also experienced Post Traumatic Stress Disorder ("PTSD") and depression causing him to become nervous and sweat in large groups of people (Tr. 72). The symptoms of PTSD and depression exacerbated his physical problems (Tr. 73). In response to questioning by his attorney, Plaintiff reported that he spent around five hours a day alternating between reclining on his side and standing (Tr. 76).

## B.    Medical Evidence

### 1. Treating Sources

 April, 2014, treating records by John C. Evanoff, M.D. note that Plaintiff did not appear in acute distress and had full mobility and grip strength (Tr. 496, 650). Dr. Evanoff recommended treating the lipomas "systematically," noting that Plaintiff could return "when necessary" (Tr. 496). He noted that Plaintiff was applying for disability benefits due to the

lipomas although he was still working (Tr. 496). In May, 2014, Plaintiff sought emergency treatment for neck pain (Tr. 282-312). Plaintiff reported sharp neck pain after bending, noting that he did not know whether it was related to a lipoma on his neck (Tr. 287). An examination was positive for tenderness of the neck but otherwise normal (Tr. 288-289). Imaging studies were negative for compression deformities of the neck (Tr. 291, 309, 678). Plaintiff was also diagnosed with a mild hiatal hernia with reflux (Tr. 294, 307). Upon discharge, he was prescribed Percoset and Flexeril (Tr. 296).

The following month, Dr. Evanoff ordered MRI studies, noting that Plaintiff's report of neck pain was consistent with symptoms of nerve entrapment (Tr. 494). A clinical examination of the neck was wholly normal (Tr. 493). The same month, pain specialist Edward M. Washabaugh, M.D. noted that Plaintiff exhibited normal sensation and strength (Tr. 666-667, 699). He administered trigger point injections without complications (702). Plaintiff reported increased pain upon sitting, standing, bending, exercising, and walking for extended periods (Tr. 666-667). In July, 2014, Dr. Evanoff noted no mobility restrictions, a normal gait, and a normal examination of the neck (Tr. 490). Dr. Washabaugh noted Plaintiff's report of level "eight" out of ten neck and back pain (Tr. 721-722).

The same month, psychological intake records by Ross Halpern, Ph.D. note Plaintiff's report of "global body pain" (Tr. 336). Plaintiff reported that he was "mildly depressed and highly stressed" about financial matters (Tr. 336). He reported problems with "new management" at work (Tr. 336). He reported PTSD after undergoing a surgical procedure

in which he felt that he was not properly sedated (Tr. 337). Plaintiff requested that his psychological treatment be documented for the benefit of his disability claim (Tr. 338). August, 2014 records by Dr. Halpern note that evaluation results showed the presence of severe anxiety and depression (Tr. 333-334). Therapy records from the same month note that Plaintiff's perception of overall body pain would be reduced by addressing depression and anxiety (Tr. 335). Other treatment records include a diagnosis of acid reflux (Tr. 656).

Treating records by Dr. Evanoff from the same month note a normal exam, no acute distress, but that Plaintiff reported that the lipomas were growing in number (Tr. 487). Plaintiff appeared depressed but exhibited normal judgment (Tr. 487). Later the same month, Dr. Evanoff completed a physical residual functional capacity assessment, deeming Plaintiff's prognosis "poor" due to Dercum's disease, chronic pain, and depression (Tr. 340). He found that due to depression and anxiety, Plaintiff would be "off task" for 25 percent or more of the workday and was incapable of even low stress jobs (Tr. 341). He found that Plaintiff was unable to walk *any* city blocks or sit or stand for more than 15 minutes (Tr. 341). He found that Plaintiff would be unable to stand or walk for even two hours in an eight-hour day (Tr. 342). He found that Plaintiff was able to lift a maximum of 10 pounds and move his head on a "rare" basis (Tr. 342). He found that Plaintiff was unable to crouch, climb, or squat and was limited to rare twisting, stooping, and manipulative activities (Tr. 343). Dr. Evanoff found that Plaintiff would require one absence each month (Tr. 343).

The following month, specialist Karen Louise Herbst, M.D. evaluated Plaintiff for

Dercum's disease, noting his reports of intermittent pain from the lipomas (Tr. 347). Dr. Herbst observed no acute distress, and a normal gait, affect, memory, and judgment (Tr. 349). She found that the frequency of lipomas could be reduced with weight loss (Tr. 351). She noted that as a rule, the prognosis for Dercum's disease was "good" (Tr. 353). She recommended "wrapping garments" and manual lymph drainage (Tr. 355). The following week, Plaintiff experienced the antibiotic reaction of gastroenteritis (Tr. 375). A CT of the abdomen was unremarkable (Tr. 451, 677). Outpatient records contain observations that Plaintiff walked more slowly due to lipomas of the thighs (Tr. 380). Dr. Washabaugh's records from the same month note Plaintiff's report that his physical problems were exacerbated by insomnia, fatigue, depression, and anxiety (Tr. 716). Dr. Evanoff's October, 2014 records note a normal examination except for a draining absess which had recently been lanced (Tr. 482). Plaintiff reported abdominal tenderness (Tr. 482). Physical therapy records from the same month note Plaintiff's report of level "four" out of ten pain (Tr. 392). Physical therapy notes from later the same month were negative for confusion or neurological or psychological problems (Tr. 397). A CT of the abdomen was negative for abnormalities (Tr. 412). Plaintiff reported increased pain due to vacuuming, painting his mother's bathroom, and playing with her dogs (Tr. 419).

In November, 2014, Plaintiff sought emergency treatment for nausea (Tr. 385). A physical examination was unremarkable (Tr. 385). In December, 2014, Dr. Evanoff noted an unremarkable physical examination but that Plaintiff complained of confusion and

stomach pain (Tr. 475). Dr. Evanoff noted Plaintiff's daily marijuana use (Tr. 475). Plaintiff sought treatment for abdominal bloating and pain (Tr. 539, 546). An upper GI was normal (Tr. 544). Plaintiff was prescribed probiotics (Tr. 567). Plaintiff exhibited a normal gait but denied an improvement in symptoms to Dr. Washabaugh (Tr. 706).

In March, 2015, Plaintiff requested a refill of psychotropic medication (Tr. 532-533). In June, 2015, Plaintiff sought emergency treatment for abdominal pain (Tr. 737-747). Emergency treatment records note that at certain times, Plaintiff appeared in pain, but at others, "look[ed] okay" (Tr. 753). Imaging studies of the abdomen were unremarkable (Tr. 758).

## 2. Non-Treating Sources

In June, 2014, R. Scott Lazzara, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of multiple lipomas of the trunk and extremities resulting form Dercum's disease, and headaches, body cramps, and poor concentration (Tr. 316). Plaintiff reported that he continued to work between three and 30 hours a week at Burger King (Tr. 316). Plaintiff reported that he could walk for four blocks, stand for "awhile," sit for up to 20 minutes, and lift up to 20 pounds (Tr. 316). Dr. Lazzara noted normal manipulative and postural abilities and full muscle strength (Tr. 314-315, 317). He observed a normal gait (Tr. 315). Dr. Lazzara noted that Plaintiff was cooperative with normal memory and judgment (Tr. 317). As to the condition of Dercum's disease, Dr. Lazzara noted that the lipomas were "non-tender," and did not create range of motion or

dexterity limitations (Tr. 320). He noted "some tenderness over the right scapular region. . ." (Tr. 320). Dr. Lazzara advised "supportive care" with pain control and anti-spasmodic medication on an "as needed" basis (Tr. 320). He found that Plaintiff's condition was stable (Tr. 320).

The same month, Gayle Oliver-Brannon, Ph.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report that he experienced difficulty continuing work due to Dercum's disease, headaches, and concentrational and memory problems (Tr. 326). Plaintiff reported that he performed light household chores, watched television, and used the computer (Tr. 326). He reported that he did not drive "as much" due to medication side effects (Tr. 327). Dr. Oliver-Brannon noted a "low" mood but normal judgment and insight and that Plaintiff was "socially appropriate" (Tr. 327-328). Plaintiff exhibited a normal memory but exhibited problems with calculations (Tr. 327). He told Dr. Oliver-Brannon that "his mood and health concerns w[ould] eventually impact negatively on his ability to engage in successful long term employment" (Tr. 328). Dr. Oliver-Brannon concluded that Plaintiff would benefit from psychotherapy to address "mood issues" (Tr. 328).

Later the same month, psychiatrist Ruqiya Tareen, M.D. performed a non-examining review of the treating and consultative records on behalf of the SSA, finding that Plaintiff did not experience limitation in activities of daily living or social functioning but experienced mild limitation in concentration, persistence, or pace (Tr. 93). Dr. Tareen observed that

Plaintiff had not received any psychiatric treatment and was able to fix simple meals, perform household chores, drive, shop, pay bills, and socialize (Tr. 93). He cited the psychological consultative examination findings that Plaintiff was in touch with reality with normal judgment, insight, and memory but experienced "some difficulty" in "calculation and concentration" (Tr. 93-94).

The same month, Glen Douglass, M.D. reviewed the treating and consultative evidence pertaining to the physical conditions on behalf of the SSA, finding that Plaintiff could lift or carry up to 50 pounds occasionally and 25 frequently; sit, stand, or walk for around six hours in an eight-hour workday; and push and pull without limitation (Tr. 95). He found that Plaintiff did not experience any non-exertional limitation (Tr. 95, 97).

## C.  Vocational Expert Testimony

VE Benoit classified Plaintiff's past relevant work as a fast food worker/short order cook as unskilled and exertionally light and work as a fast food manager, semiskilled/light[4] (Tr. 79). The ALJ then posed the following set of restrictions, describing a hypothetical individual of Plaintiff's age, education, and work history:

[T]his hypothetical person can lift and carry 20 pounds occasionally; 10

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

pounds frequently, can sit, stand, and walk six of eight hours each, can crawl and kneel, stoop and crouch frequently. [He] cannot be exposed to unprotected heights, moving machinery or driving a motor vehicle. [He] can be exposed to ramps and stairs frequently and ladders, ropes or scaffolds occasionally. Can this person perform the claimant's past relevant work as it was actually performed or as described in the [*Dictionary of Occupational Titles*]? (Tr. 79-80).

Based on the above restrictions, VE testified that the hypothetical individual would be capable of performing Plaintiff's past relevant work as actually and customarily performed (Tr. 80). The VE testified further that if the same individual were additionally limited to occasional crawling, kneeling, stooping, and crouching; and, would be limited to "simple one to two-step tasks but not at a production rate pace, changes . . . gradually introduced and fully explained" with "only occasional contact with the public, coworkers and supervisors, occasional stairs and ramps but never ropes or scaffolds," all of Plaintiff's former work would be precluded (Tr. 80-81). However, the VE testified that the restrictions would allow for the unskilled, light work of a laundry folder (3,000 positions in the State of Michigan); mail clerk (1,500); and sorter (1,200) (Tr. 81). The VE testified further that if the same individual were additionally limited by a preclusion on crawling and kneeling and work done "in tandem with . . . coworkers" and "contact with the public," the job numbers would remained unchanged (Tr. 82).

The ALJ then posed a new set of restrictions pertaining to an individual of Plaintiff's age, education, and work background:

[C]an only lift and carry, push and pull up to 10 pounds occasionally, that [he] could sit, stand or walk six of eight hours each, that [he] could occasionally

crawl or kneel, stoop or crouch, that it's simple one to two-step tasks, not at a production rate pace, such as an assembly line, that changes would be gradually introduced and full explained. No unprotected heights, moving machinery and no driving of a motor vehicle, no contact with the public, occasionally contact with coworkers but not in tandem and occasional contact with supervisors, occasional ramps or stairs but never ladders, ropes or scaffolds (Tr. 82).

The VE testified that while the restrictions precluded all of Plaintiff's past relevant work, it allowed for the unskilled, sedentary work of an addresser (650); final assembler (1,000); and surveillance system monitor (200) (Tr. 83). She stated that the restrictions of the inability to crawl, kneel, or crouch and only occasional stooping would not change the job findings (Tr. 83). She stated that the need to miss one day of work each month on a consistent basis, or, the need to be off task 15 percent or more of the day would preclude all unskilled work (Tr. 83-84). In response to questioning by Plaintiff's attorney, the VE testified that the job samples cited would allow a person to change position from standing to sitting so long as they stayed at their work station (Tr. 85).

**D.     The ALJ's Decision**

Citing the medical transcript, ALJ Herring found that Plaintiff experienced the severe impairments of "depression; [PTSD]; anxiety; obesity; and . . . Dercum's disease" but that none of the impairments met or equaled a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21-22). She found the medical conditions of mild hiatal hernia and hemorrhoids non-severe (Tr. 22). The ALJ determined that Plaintiff experienced no restriction in activities of daily living and moderate limitation in social functioning and

concentration, persistence, or pace (Tr. 22-23). Plaintiff retained the Residual Functional

Capacity ("RFC") for exertionally light work with the following additional limitations:

> [H]e can sit, stand, and walk up to six hours, each, in an eight hour day. He
> can occasionally climb ramps and stairs, but never climb ladders, ropes, or
> scaffolds. He can occasionally stoop and crouch, but never kneel or crawl. He
> can never work around unprotected heights or moving mechanical parts, and
> can never operate a motor vehicle. He is limited to performing simple, 1-2
> step tasks, but not at a production rate pace, for example, no assembly line
> work. There should be few changes in the work setting, and when changes
> occur they need to be gradually introduced and fully explained. He should
> have no contact with the general public and only occasional contact with co-
> workers and supervisors, with no tandem work (Tr. 23-24).

Citing the VE's findings, the ALJ found that while Plaintiff was unable to perform his past

relevant work, he could perform the exertionally light, unskilled work of a folder, mail clerk,

and sorter (Tr. 29-30, 81).

The ALJ discounted Plaintiff's allegations of limitation. She cited Dr. Evanoff's

April, 2014 records noting a "generally normal examination aside from obesity and multiple

lipomas" (Tr. 25). She observed that as of August, 2014, Plaintiff had a normal gait and a

neurological examination was unremarkable (Tr. 26). The ALJ cited September, 2014

records indicating that Plaintiff had been cleaning his mother's house, painting, and playing

with dogs (Tr. 26). The ALJ acknowledged that the medical records reflected some level of

impairment but that Plaintiff's "allegations are considerably more limited and restricted than

is established by the medical evidence" (Tr. 29).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

Plaintiff makes two arguments in favor of remand. *Plaintiff's Brief, Docket #19.* First, he contends that the RFC composed by the ALJ was not supported by the treating opinions or other evidence. *Id.* at 14-19, Pg ID 850. Second, he contends that the ALJ's credibility determination was not well supported or explained. *Id.* at 19-24.

Because resolution of the credibility argument is partially dispositive of the contentions regarding RFC, Plaintiff's arguments are considered in reverse order.

## A. The Credibility Determination

Plaintiff contends that the ALJ relied solely on the objective evidence in rejecting his allegations of pain and limitation. He contends, in effect, that the ALJ failed to consider the portion of the administrative credibility analysis which requires consideration of the entire record in evaluating the allegations of limitation not supported by the objective evidence. *Plaintiff's Brief* at 19-24.[5]

The credibility determination, currently guided by SSR 96-7p, describes the process for evaluating symptoms.[6] As a threshold matter, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment ... that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a

---

[5]

Plaintiff does not address the ALJ's discussion or conclusions regarding his psychological limitations. However, based on my own review of the record, the ALJ's finding of moderate limitation in social functioning and concentration, persistence, or pace is adequately reflected in the RFC for unskilled, non-production work with limited contact with others (Tr. 22-23).

[6]

In March, 2016, SSR 16-3p superseded SSR 96-7p. The newer Ruling eliminates the use of the term "credibility" from SSA policy. SSR 16-3p, 2016 WL 1119029, *1 (Mar. 16, 2016). The Ruling states that "subjective symptom evaluation is not an examination of an individual's character." Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." See 20 C.F.R. § 404.1529(c)(3), fn 7, *below*. Nonetheless, SSR 96-7p applies to the present determination, decided on August 20, 2015. See *Combs v. CSS*, 459 F.3d 640, 642 (6th Cir. 2006)(*accord* 42 U.S.C. § 405(a))(The Social Security Act "does not generally give the SSA the power to promulgate retroactive regulations").

claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."[7] *Id.*

Plaintiff's argument hinges on the second prong of SSR 96-7p.   He contends that because limitations resulting from Dercum's disease cannot be confirmed by the objective studies, his claims of functional limitations and pain were entitled to greater weight. However, contrary to Plaintiff's assertion, the ALJ provided a thorough discussion of both Plaintiff's allegations and her reasons for rejecting some of them.  First, she summarized his professed limitations of daily living, modalities, and limitations, acknowledging his testimony that he rarely drove, stopped taking medication due to an insurance lapse, used compression garments, smoked marijuana for pain management, slept poorly, required naps, and was unable to lift more than 10 pounds (Tr. 24-25).

While Plaintiff contends that credibility determination over-relies on the imaging studies, in fact, the ALJ provided a two-and-a-half page discussion devoted mostly to the

---

[7]

    In addition to an analysis of the medical evidence, 20 C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination: "(i) . . .  daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

treating and consultative *observations* contradicting the allegations of extreme limitation (Tr. 25-27). The ALJ noted that the May, 2014 emergency room visit records showed a normal gait and reflexes (Tr. 25, 288-289). She cited Dr. Lazzara's consultative findings from the following month citing Plaintiff's acknowledgment that he was capable of lifting 20 pounds (Tr. 25). She noted that Dr. Lazzara's observations included full grip strength, a full range of motion, good manipulative functioning, and the ability to squat and hop (Tr. 25, 314-320). The ALJ cited later records noting that despite the report of pain upon flexion of the cervical spine, he exhibited a normal gait, strength, and reflexes (Tr. 26, 490).

Plaintiff also faults the ALJ's citation to the medical records showing that he was able to vacuum and paint a bathroom (Tr. 26, 419), arguing that his intermittent activities do not support the finding that he was capable of full-time work. However, the ALJ also cited Plaintiff's report to Dr. Lazzara that his regular "activities" included working up to 30 hours a week as of June, 2014 (Tr. 25, 316). Plaintiff's ability to work up to 30 hours a week is particularly remarkable, given that as of that date, he was alleging "disability" as of June, 2013. While Plaintiff objects to the characterization of the clinical records as fairly unremarkable, the ALJ cited Dr. Evanoff's April, 2014 treating records which included the observation that Plaintiff did not appear in acute distress and had full mobility and grip strength (Tr. 496, 650). Dr. Evanoff's finding that Plaintiff was to return on an "as needed" basis suggests intermittent rather than chronic limitations resulting from Dercum's disease (Tr. 496).

Plaintiff also contends that the ALJ failed to consider that his ability to obtain treatment was compromised by the temporary loss of medical insurance. He cites SSR 96-7p which states that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.* at *7. However, the ALJ acknowledged that Plaintiff had an "insurance lapse"and there is no indication that she discredited the allegations of disability on the basis that he was unable to obtain regular treatment (Tr. 24). Further, the ALJ did not altogether reject Plaintiff's allegations of pain and fatigue, but reasonably found that the conditions nonetheless allowed for a limited range of light, unskilled work (Tr. 29).

Because the ALJ's findings are well explained and supported by both the clinical observations and Plaintiff's regular activities, the deference generally accorded the administrative credibility determination is appropriate in this case. *See Cruse v. CSS*, 502 F.3d 532, 542 (6th Cir. 2007)("an ALJ's credibility determinations about the claimant are to be given great weight . . .").

## B. The RFC

 Plaintiff also argues that the RFC for a limited range of light, unskilled work was based on a "very selective, incomplete reading of the record . . ." *Plaintiff's Brief* at 14. Specifically, he notes that the RFC does not reflect Dr. Evanoff's August, 2014 "disability

opinion" and Dr. Herbst's September, 2014 findings.  *Id* at 14-19.

The RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security*, 276 F.3d 235, 239 (6th Cir. 2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account" *Id.* (*citing* 20 C.F.R. § 416.945). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(1)(RFC must be based on all "relevant evidence"). The RFC must consider the alleged physical, mental, and environmental restrictions. § 404.1545(b-d).

Plaintiff's argument that the RFC is not supported by the evidence centers on the ALJ's accord of "little weight" to Dr. Evanoff's August, 2014 opinion of disabling limitations (Tr. 27-28, 340-343).  Plaintiff argues that Dr. Evanoff's finding of extreme limitation are consistent with his own allegations.  However, the ALJ correctly noted that Dr. Evanoff's findings of extreme limitation were inconsistent with Plaintiff's report to other sources (Tr. 28).  For example, while Dr. Evanoff found that Plaintiff was incapable of walking even one block or lifting more than 10 pounds (Tr. 341-342), Plaintiff told Dr. Lazzara only two months earlier that he could walk for four blocks and lift 20 pounds (Tr. 316).  Plaintiff's implied claim that the ALJ was required to adopt all of the limitations in Dr. Evanoff's opinion is without merit.  Having adequately explained her reasons for rejecting Dr. Evanoff's opinion, she was not required to include the discounted findings in the RFC. *See Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th

Cir. 1994)(ALJ not obliged to include discredited material in question to VE or by extension, the RFC).

While Plaintiff argues that Dr. Herbst's September, 2014 examination also supports the finding that the limitations and pain resulting from Dercum's disease were disabling, Dr. Herbst did not make any finding of limitations and noted that the prognosis for Dercum's disease was generally "good" (Tr. 353). Dr. Herbst's observation that Plaintiff was in "no acute distress," and had a normal gait, affect, memory, and judgment, further undermines Plaintiff's claim that he experienced chronic, disabling pain (Tr. 349). Because the residual abilities set forth in the RFC are well explained and supported, Plaintiff's argument on this point should also be rejected.

It should be noted in closing that my recommendation to uphold the administrative findings should not be read to trivialize Plaintiff's limitations and medical conditions. Nonetheless, the ALJ's determination that he was capable of a significant range of unskilled work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI. CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment [Docket #19] be DENIED and that Defendant's Motion for Summary Judgment [Docket #25] be GRANTED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issue first raised in objections to a magistrate judge's report and recommendation are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," *etc*.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

Dated: August 22, 2017          s/R. Steven Whalen
                                R. STEVEN WHALEN
                                UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

I hereby certify on August 22, 2017 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants August 22, 2017.

s/Carolyn M. Ciesla
**Case Manager for the**
**Honorable R. Steven Whalen**